Joanne SHUBER and John Shuber, her
husband, Appellants,

v.

S. S. KRESGE COMPANY, a Michigan
corporation

v.

CROWN CONSTRUCTION CO. et al.
Third-Party Defendants.

No. 71-1084.

United States Court of Appeals,
Third Circuit.

Argued Jan. 25, 1972.

Decided April 19, 1972.

As Amended May 3, 1972.

James A. Ashton, Pittsburgh, Pa., for
appellants.

Bernard J. McAuley, Wayman, Irvin,
Trushel & McAuley, Pittsburgh, Pa., for
appellee.

Before BIGGS, MARIS and VAN DU-
SEN, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

The Shubers, John and Joanne, hus-
band and wife, citizens of Pennsylvania,
sued S. S. Kresge Company (Kresge),
a Michigan corporation qualified to do
business in Pennsylvania, because Mrs.
Shuber was injured when a light fix-
ture fell upon her on December 8, 1965
while she was working for F. & G. Mer-
chandising, Inc. (F. & G.), which was
operating for its own account the "Auto
Department" in a store operated by Kres-
ge. Mrs. Shuber sought damages for
her injuries and Mr. Shuber sought to
recover his wife's medical expenses and
for loss of her services. Kresge, as a
third-party plaintiff, joined Kirby Elec-
tric Service, Inc. (Kirby), Crown Con-
struction Company (Crown), and F. &
G. as third-party defendants, all three
corporations being incorporated in the
Commonwealth of Pennsylvania. There
are statements in the deposition of Zap-
pala, president of Versailles Development
Corporation (Versailles), that Versailles
was the landlord of the building, that
Versailles' lease [1] was with Kresge as
tenant, that the K-Mart Store was oper-
ated by Kresge, that the "Auto Depart-
ment" was operated independently of
Kresge by F. & G. as a concessionaire.
Zappala also testified that Crown was
the general contractor for Versailles,
that Kirby did some electrical work per-
haps in the area where Mrs. Shuber was

---

1. Not in evidence.

injured. The relation of Kirby to Versailles and to Kresge is far from clear.[2]

Under the rules of the United States District Court for the Western District of Pennsylvania in effect at all times with which we are concerned, a plaintiff is required to give a narrative written statement of the facts that will be offered by him to prove his case "by oral or documentary evidence" at trial and also the names and addresses of all witnesses he expects to call.[3] The Shubers' theory of recovery was clearly set up in the complaint and in their first pretrial narrative statement. It was that Kresge had been negligent in installing or having installed the light fixture which fell and injured Mrs. Shuber. As to witnesses to testify on the issue of liability the Shubers' first pretrial narrative statement filed March 1, 1967 included one designated as "Plaintiff." There were, of course, two plaintiffs and the Shubers' counsel attributes his use of the word "Plaintiff" to a typographical error, an "s" having been omitted. Shubers' counsel has not yet made clear which plaintiff was omitted and which one was indicated by the word "Plaintiff." There was no suggestion in the pretrial narrative statement that Mr. Shuber, an electrician by trade, was to testify respecting the lighting fixture which fell on his wife. In the Shubers' Supplemental Pretrial Statement, filed December 2, 1969, no additional liability witness was designated.[4]

At the trial[5] Mrs. Shuber testified that she heard a loud noise like a heavy box being dropped above her and the lighting fixture fell. Mr. McKernan testified to the same effect. There was evidence that a room above the room in which Mrs. Shuber and McKernan were at the time of the accident was a storeroom where battery cables and various other items relating to the business of F. & G. were stored, and that there was generally a stock clerk in that storeroom, which seems to have been occupied only by employees of F. & G. Mrs. Shuber testified, as did McKernan, that this was not an uncommon happening and Mrs. Shuber said she had complained about it. Only one more witness was called by the Shubers who corroborated the occurrence of the accident. The Shubers then rested. The defective nature of the lighting fixture's fastenings was proved but there was not sufficient evidence to connect Kresge with the deficiency. Kresge moved for a directed verdict on this ground. The Court granted the motion, stating *inter alia,* "Throughout the pleading, discovery and pretrial stages of this case, the case proceeded on the contention that the fixture was installed by Kirby Electric Service, as a subcontractor to Crown Construction Company. The allegations of the pleadings, pretrial narratives, and the plaintiff's evidence of liability at trial were all pointed to the contention that Kresge failed in its duty to discover the defective ceiling fastening. In the view of the Court the evidence produced by plaintiff[s] failed to reveal that Kresge could have discovered the defendant [*sic*] . . . [defect] on reasonable

2. See Kirby's answers to interrogatories propounded by Kresge suggesting that Kirby had done some work on the light fixtures in the area where Mrs. Shuber was injured. The answers to the interrogatories were filed April 19, 1967.

3. See "Rule 5, II. Pre-Trial Procedure, C.2(d)," rule in effect from June 27, 1967 until June 16, 1970 and rule in effect on June 16, 1970 and thereafter.

4. It should be noted that at the pre-trial hearing on July 9, 1968, Judge Willson asked the Shubers' counsel if he was going to call additional witnesses. Judge Willson said: "It seems to me you have to have some proof in the first instance of some defect or some faulty construction or installation or something." Mr. Stitt, who attended the pretrial in lieu of Mr. Ashton who later tried the case for the Shubers, replied: "I think Mr. McKernan will get us to the jury." Judge Willson said: "You haven't even talked with him." Mr. Stitt replied: "My client spoke with him right after the accident. We have a recap of this statement to her." Transcript of Proceedings, Pretrial Conference at 3. Mr. McKernan's evidence turned out to be quite insufficient.

5. The case was tried with a jury.

inspection, or that such inspection was required of it.

"When Plaintiff[s] closed . . . [their] evidence on liability at trial, Defendant [Kresge] moved for a directed verdict. After argument on this point Plaintiff[s]' counsel moved for leave to reopen to call an additional witness not previously listed on Plaintiff[s]' pretrial statement. Plaintiff[s]' offer was to produce an officer of the Versailles Development Corporation, a real estate development and holding enterprise, which owned the title to the land and constructed the building for Kresge according to Kresge's plans and specifications. The purpose of the offer of this evidence was to show that the method of fastening the fixture to the ceiling was specified by Kresge on its plans and that because the space above the ceiling was used by Kresge as a warehouse, causing jarring and vibration of the floor and underlying ceiling, a different type of fastening should have been used. The witness to be called would identify these plans and specifications.

"The Court withheld determination of the motion and continued the trial until the next day, allowing Plaintiff[s] to procure this witness.

"The following day, before taking any evidence, the plaintiff[s]' counsel announced that he also intended to call husband-plaintiff to testify that when Kresge took possession of the building from the contractor, the ceiling in the sublet portion of the premises where plaintiff was injured was in an unfinished state. It was offered that he would testify that Kresge itself installed the ceiling tiles and in the process disconnected the lighting fixtures, and then reinstalled them, in the process of which the attachment was made to the insubstantial ceiling tiles rather than the underlying solid joists. The husband-plaintiff was also an electrician and it was offered that he would testify that the defective installation would be apparent on reasonable inspection.

"Defendant objected that it had no prior notice that husband-plaintiff would be called as a liability witness. In the wife-plaintiff's deposition she had testified that her husband had no knowledge of the facts of the accident. It was also pointed out that husband-plaintiff had been present throughout the trial and plaintiff[s]' counsel had rested on the issue of liability without calling him.

"On this argument, and in the interest of enforcing the Pretrial Rules of this Court, Defendant's Motion for Directed Verdict was granted. Plaintiff[s]' counsel was attempting to change completely the theory of liability under which the case was prepared, discovery employed, pretrial procedures conducted, and under which it was presented up until the moment that plaintiff[s] rested, and defendant moved to dismiss. Husband-plaintiff sat through the trial proceedings up to this point and there was never any suggestion that he had any evidence of a different kind to offer.

"We have two questions here on Plaintiff[s]' Motion for relief; (1) Was the evidence produced sufficient to raise a question of fact that the defect could have been discovered by Kresge by reasonable inspection and that the circumstances required such inspection as would have revealed the defect; and (2) should the plaintiff[s] have been allowed to reopen . . . [their] . . . case to introduce an entirely new theory of liability, that Kresge itself was responsible for the insecure fastening?

"On the first question we are convinced that Plaintiff[s]' evidence was insufficient.

"As to the second question it should certainly have been prejudicial to Defendant to allow the introduction of this entirely new evidence. Kresge had no notice that it would be charged as the party which installed the insecure fastening. Its joinder of Crown Construction Company and Kirby Electric Service was made on the basis that the contractors had installed the fixture, and Kirby Electric Service admitted in discovery proceedings that it had installed the fixture.

"The introduction of such evidence would certainly require a modification of the Pretrial order in this case, if not an amendment to plaintiff[s]' complaint. We recognize the statement of Judge (now Chief Justice) Burger in Washington Hospital Center v. Cheeks [129 U.S. App.D.C. 339], 394 F.2d 964, 965, '. . that liberal modification of pre-trial orders encourages careless preparation of the case by the attorneys involved. However, it is equally true that "an unswerving insistence upon every provision, under all circumstances, may work grave injustice in individual cases. . . ."'

"The laxity of counsel was apparent in this case. Counsel was warned by the judge conducting the pretrial conference of the standard of proof he would be required to meet, and when the matter came on before the undersigned for trial he was no better prepared.

"Judge Aldisert of the Court of Appeals for this Circuit, from an extensive background as a trial lawyer and a trial judge, has noted the dilemma of the trial judge in this situation in his dissent in Deakyne v. Commissioners of Lewes, 416 F.2d 290, 301 [3rd Cir., 1970] : '. . . If there was any prejudice to the Town in the trial, it came from its own counsel table and not the bench. . . .'

"Plaintiff[s]' counsel's laxity merits no consideration but perhaps the client requires some. We will not rule on Plaintiff[s]' Motions at this time but hold the same under advisement pending further action as required herein.

"Plaintiff[s]' counsel shall, at his own personal cost and expense, produce the witnesses who were offered at trial, i. e., John Shuber, husband-plaintiff, and the officer of . . . [Versailles], together with construction blueprints, for examination by Defendant and Third-Party Defendants on oral deposition. Plaintiff[s]' counsel shall arrange for a time for such deposition convenient to opposing counsel, and shall provide for a transcript of said testimony to be furnished at his cost, for the use of opposing counsel. A copy of such transcript shall be filed with the court and the undersigned shall be notified when this is done. Said deposition shall be taken and the transcript filed on or before September 1, 1970.

"Upon review of said transcript the court will call for further argument of counsel." [6]

The depositions of Mr. Shuber and the president of Versailles were taken and are part of the record here. On examining them, after further argument, Judge Weber stated in an opinion: [7] "The granting of a new trial in this case would probably enable plaintiff[s] to present a *prima facie* case of liability on the part of defendant which she was unable to do in the first trial. However, the events are five years old and defendant has been preparing his defense in accordance with the original theory developed by plaintiff[s] during the pretrial and trial stages. Defendant even secured the admissions of the third-party defendant Kirby that it was the party which installed and re-installed the lighting fixture in question." Our examination of the depositions of Mr. Shuber and Zappala perhaps might lead us to a different conclusion. Going on, however, Judge Weber also stated: "[T]he Court has an interest to support the integrity of its pretrial procedures. The Pretrial Order in the case binds and limits the parties to what they have presented and revealed in their Pretrial Narratives and at the Pretrial Conference. Neither at the Pretrial Conference, nor in the trial was this new line of evidence suggested. We must either require adherence to our Pretrial Rules or abandon them utterly in this case. We think that the interests of the efficient administration of justice require their enforcement." With this statement of the trial Judge we are thoroughly in accord.

---

6. The opinion was reported for publication, 55 F.R.D. 52.

7. Also reported, 55 F.R.D. 52.

The trial Judge referred to the prosecution of the plaintiffs' case by their counsel as "lax." We agree with this statement. Such an inadequate prosecution of a client's cause mystifies us and would appear to be in violation of the Code of Professional Responsibility of the American Bar Association requiring a lawyer to represent his client competently and zealously within the bounds of the law.

The judgment will be affirmed.