Christopher PAKECH

v.

**AMERICAN EXPORT–ISBRANDTSEN LINES, INC.**

v.

**ATLANTIC & GULF STEVE-DORES, INC.**

Civ. A. No. 72–1340.

United States District Court, E. D. Pennsylvania.

Jan. 29, 1976.

Robert C. Daniels, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

William L. Keller, Philadelphia, Pa., for American Export-Isbrandtsen Lines, Inc.

Clayton H. Thomas, Jr., Philadelphia, Pa., for Atlantic Gulf Stevedores, Inc.

## OPINION AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

This post-trial Motion for a New Trial presents a case that is an unfortunate example of disappointing trial advocacy and inefficient utilization of the resources of this Court and counsel.

The action involves a longshoreman who was injured while working on board defendant's vessel when he allegedly

stepped into a hole or space in the cargo of bales of tobacco. Liability was based on claims of negligence and the unseaworthiness of the vessel. The trial of the case was bifurcated, and in response to interrogatories, the jury found that the shipowner had not been negligent nor that the ship was unseaworthy. Accordingly, judgment was entered in favor of the defendants.

In his Motion for a New Trial, plaintiff's chief contention is that the Court erred by permitting the defendant to assert a factual allegation and theory of defense that had at no time been disclosed prior to the time of trial, to his surprise and prejudice.[1] Having carefully reviewed the briefs and arguments of all parties, we have determined that we must grant plaintiff's motion because we believe that, in a fundamental sense, he was deprived of a fair trial.

The crucial factual issue, as it developed at trial, was whether or not there was brown separation paper between the tiers of the bales of tobacco which concealed the existence of spaces between the bales.

Plaintiff, from the outset, sought to establish the presence of separation paper in the cargo. Essentially, this was the *sine qua non* of his liability theory, and it was clearly set forth in his pretrial memorandum:

"Plaintiff . . . was injured when he was caused to step into a hole or space that existed in the cargo of bales of tobacco, *which hole or space was hidden and covered by brown separation paper* that was covering the entire area (including the cargo beneath it in which the hole or space was present) in which plaintiff was required to work at the time. *As a result of his being caused to step into the unprotected, unguarded and hidden hole or space as previously described,* plaintiff was caused to fall, thereby twisting and striking his lower back area. . . .

"The S/S Export Aide was unseaworthy and defendant was negligent . . . *in allowing and permitting holes or spaces in the stow of cargo to be covered over with brown separation paper* without providing any dunnage or filler for such holes or spaces, *in allowing brown separation paper to exist in the stow of cargo of bales of tobacco* without providing safe, adequate or proper foundation, support or dunnage underneath said brown separation paper . . ." (Emphasis supplied).

In response, the defendant and the third-party defendant (the stevedoring company which was the plaintiff's employer)[2] answered with rather general denials but never specifically put the existence of separation paper at issue. Their respective pre-trial submissions stated as follows:

". . . [P]laintiff while in the course of his duties stepped into a hole or space that existed between the bales of tobacco. If, in fact, such condition existed it did not render the vessel unseaworthy nor the defendant negligence (sic) in that such a condition is an ordinary and natural condition and a factor which all competent longshoremen are aware.

1. Aside from this general contention, plaintiff also complains of certain evidentiary rulings with regard to the testimony of witnesses presented by defendant in support of his new theory. In light of our disposition on the former point, and because we view these rulings merely as specific instances of the basic error claimed, we do not deal with them here.

2. We note the peculiar alignment of the parties in this case. The third-party defendant,

despite its status as such, took an active part with the shipowner in the defense against plaintiff's claim. Essentially, the two defendants put forth a unified front at the time of trial and continue their close relationship in opposition to the present motion. Many of their arguments are identical, and to that extent, they will be treated together, in such cases, reference being made jointly to "the defendants."

". . . [P]laintiff . . . and his fellow workers failed to follow normal and safe stevedoring procedures in removing the separation paper between the bales of tobacco as their work progressed.

"The third party defendant Stevedores breached their warranty of workmanlike performance in failing to remove the separation paper that existed as their work progressed . . ."

Defendant's pre-trial Memorandum at pp. 1–2.

"Plaintiff was discharging bales of tobacco from the No. 2 lower hold of defendant's vessel and contends that he injured his back when he stepped into a space or hole between the cargo. Third party defendant places all facts at issue and demands strict proof that plaintiff's injury was caused by a defective or unseaworthy condition of the stow or negligence on the part of the vessel owner. If there was a space existing between the bales, it was completely hidden and third party defendant had no reason to know of its existence."

Third-party Defendant's pre-trial Memorandum at p. 1.

During the course of pre-trial proceedings, and in particular at several pre-trial conferences held before the U. S. Magistrate, it became apparent, through defendants' representations, that the defense would be based on a contradictory version of the happening of the accident which plaintiff allegedly gave to his employer's timekeeper and which was recorded on an accident report known as a Form 202.[3] (See, affidavit and deposition of Magistrate Edwin E. Naythons which have been filed of record.) Neither defendant at any time gave any clear indication, of record or otherwise, that they intended to contest the factual proof of the presence or existence of separation paper in the cargo of tobacco.

„In this posture, then, the case proceeded to trial and through the plaintiff's case in chief. It was not until the presentation of evidence in defendant's case that the factual issue was raised. Indeed, it was this basic challenge to the factual foundation of his case that plaintiff contends constituted a new theory of defense that was first put forth at the time of trial. Significantly, it became the main if not the only line of defense. (N.T. 341–342, 345–346). The defendants, however, asserted at trial, as they argue now in their briefs and argument, that they never admitted plaintiff's version of the accident and always intended to challenge the credibility of his evidence, and that this plaintiff well knew. Stressing, therefore, that he was or should have been aware of the defense to be asserted, it is claimed that plaintiff was not surprised by the evidence that was offered.

■ The Court, however, has concluded to the contrary, since we find that the defendants in no way adequately disclosed that they would seek to disprove that there was separation paper in the hold where plaintiff was injured. We reject the semantic arguments that they denied this factual condition all along and agree with plaintiff that he, as well as the Court, was unfairly surprised by the assertion of this theory of defense.

A similar situation occurred in *Payne v. S. S. Nabob,* 302 F.2d 803 (2d Cir. 1962), cert. denied, 371 U.S. 870, 83 S. Ct. 136, 9 L.Ed.2d 107 (1962). Therein, it was plaintiff who sought to amend his pre-trial memorandum to include a new theory of liability prior to the time that the trial actually commenced. The trial Judge refused to allow such an amendment and denied plaintiff's re-

---

3. The Form 202 report (Tr.Ex.D–1), revealed that "Employee claims: He hurt his back while picking up bales of tobacco prior to discharging them from hatch."

quest for a continuance, requiring plaintiff to go to trial on the basis of his existing factual contentions and allegations. In affirming the actions of the trial Judge, the Court of Appeals stated the controlling principle with regard to pretrial disclosure:

> "It has long been the law that attorneys at the pretrial stage 'owe a duty to the court and opposing counsel to make a full and fair disclosure of their views as to what the real issues at trial will be' . . . It is through such disclosure at pretrial that trial prejudice can be avoided. The awareness of appellant's attorney to the trial situation is apparent in his request for a continuance when he told the court 'I think under the circumstances I would move for a continuance of the case to give *the other side* ample time, because actually this is a question of surprise.' (Emphasis supplied)"

302 F.2d 803, 807 (citations omitted).

In the instant case, it is clear that the defendants were also well aware of the potential prejudice to the plaintiff as a result of the new theory of defense that was asserted. The record discloses numerous instances during lengthy sidebar discussions where the defendants variously suggested that a mistrial be declared and plaintiff be allowed to take further depositions (N.T. 354, 379), that a continuance or mistrial be granted (N.T. 386), and where the defendant shipowner specifically moved for a mistrial and offered to reimburse all of plaintiff's expenses because it was *"the only fair thing to do"* (N.T. 389, 399–400). It is true that plaintiff's counsel never acceded to such suggestions nor formally moved for a continuance or mistrial. Yet, we do not find persuasive the notion that by choosing to go forward with the trial that the prejudice to the plaintiff was any the less in its effect. Where an element of surprise exists and prejudice results, the burden should not fall on the victim who is caught unaware, but instead, the consequences must be borne by the parties who created the potential for injustice.

This, of course, follows directly from both the letter and the spirit of our Rules of Procedure and Local Rules of Court. See, F.R.Civ.P. 16 and Local Rule 7; 3 Moore's Federal Practice § 16.11. The philosophy and purpose of pre-trial procedures was early recognized in *Burton v. Weyerhauser Timber Co.*, 1 F.R.D. 571 (D.Or.1941), a case that arose only shortly after the adoption of the Federal Rules. Therein, in awarding a new trial, sua sponte, because of the failure of counsel to disclose defenses later advanced at trial, the court declared:

> ". . . [I]t must be made clear that surprise, both as a weapon of attack and defense, is not to be tolerated under the new Federal procedure. In view of the known (and one of the primary) objectives of the New Rules of Civil Procedure, to eliminate surprise as a trial tactic, one can hardly imagine a greater breach of the spirit of the New Rules . . . ." *Burton*, supra, 1 F.R.D. at 573.

Indeed, *Burton* is an ample precedent for our decision herein in light of its almost identical facts to those of the case at bar.

In addition, however, our Local Rule 7 with regard to pre-trial memoranda seeks to foster this policy of full and faithful disclosure of trial issues. It provides, *inter alia*, for the filing of a pre-trial memorandum containing:

> "(1) A brief summary statement of both the facts of the case and counsel's contentions as to the liability of defendant . . .

> "Defendant's counsel in his pre-trial memorandum shall note, with the same degree of particularity as required by plaintiff, under correspondingly lettered paragraphs, significant comments indicating areas of agreement or disagreement regarding the material in plaintiff's memorandum."

And the spirit is as clear as the letter of this rule. As stated by Judge Freedman in *Taggart v. Vermont Transportation Company*, 32 F.R.D. 587, 588 (E.D. Pa.1963) aff'd 325 F.2d 1022 (3d Cir. 1964):

> "The Local Rules dealing with pre-trial memoranda seek to clarify the issues and reduce the element of surprise. . . . These Rules, *which require the most complete disclosure on both sides,* must not be permitted to degenerate in practice into traps for the unwary. Compliance with their provisions should be *candid and complete.* Counsel will not be required to read his adversary's pretrial memorandum in search for what it may conceal." (Emphasis supplied)
> 32 F.R.D. at 588.

■ Measured by such elementary standards of pre-trial disclosure, the representations of the defendants were undeniably less than candid or complete. Their compliance with our procedural rules was virtually meaningless, particularly in light of the challenge that was raised to such a central factual element of plaintiff's case. But more importantly, we do not deal here with mere technicalities. The interests embodied in these rules are significant and are an essential part of the administration of justice, and it is the Court's duty to protect the integrity of its pre-trial procedures by requiring their enforcement. *Shuber v. S. S. Kresge Company,* 55 F.R.D. 52, 56 (W.D.Pa.1970), aff'd 458 F.2d 1058 (3rd Cir. 1972). We do so in the context of this case by granting a new trial.

The defendants, for their part, assert three basic arguments in opposition to plaintiff's motion, each of which can be briefly discussed.

■ First, it is argued that plaintiff was not in fact surprised by their defense since their pleadings and pre-trial memoranda revealed that they denied all of his factual allegations. Even if this was so, such broadly worded denials were at best only cryptic references to their intended defense which clearly fall far short of the kind of "full and fair disclosure" that our pre-trial procedures require. *Payne v. S. S. Nabob,* supra.

Defendants argue further that plaintiff knew that they always intended to challenge "the credibility of his version of the accident," but this, of course, was no more enlightening than any other representations. Moreover, what little plaintiff's counsel did know was ultimately misleading since defendants gave every indication that the attack on plaintiff's credibility was to be based on an entirely different version of the accident that made no reference to the issue of the existence of separation paper. See, footnote 3, supra, and accompanying text. There was, therefore, simply no reasonable basis on which plaintiff should or could have known of such a defense.

■ The defendants' second argument, stressed more by the third-party defendant, makes much of an apparent distinction between factual testimony and opinion evidence on the matter of custom and usage with regard to separation paper. At the time of trial, the Court permitted testimony on the latter point, believing then that it was admissible as to the alleged negligence of the shipowner and the unseaworthiness of its vessel and, more importantly, that it could be limited to those issues. Evidence was elicited from three of the defendant's witnesses[4] to establish that separation paper was, as a matter of custom in the trade, not used in cargos of tobacco for reasons that are not pertinent here. It is quite clear now that this evidence was offered solely for the

---

4. The witnesses are those about whom the plaintiff charges the Court erred in its evidentiary rulings: William Wheeler, Raymond McLaughlin, and William Ommundsen.

purpose of suggesting to the jury the obvious inference that there was in fact no separation paper in the cargo on board defendant's ship.

Defendants contend that this indirect proof was properly admitted despite the fact that they apparently concede that direct factual evidence in contradiction to plaintiff's witnesses was not. Unfortunately, we see no difference between the two. No matter how the defendants choose to characterize their evidence, its probative value was only to dispute the factual issue concerning the existence of separation paper. Thus, since we have now concluded that plaintiff was unfairly surprised by the assertion of this theory of defense, we must also conclude, in light of the purpose for which it was intended, that to have allowed this testimony, and the resulting inference, to go to the jury was error.

Finally, defendants argue that though plaintiff may have been surprised by their defense, such surprise had no prejudicial effect. They contend that plaintiff had ample opportunity to overcome any surprise by challenging their evidence and offering witnesses in rebuttal, which he did. Furthermore, it is argued, plaintiff's counsel himself failed in certain respects to timely object to defendant's proof or to move for a continuance or mistrial, or otherwise to take steps to prevent possible harm.

■ We do not, as noted before, find the latter point appealing. While it must be recognized that a party claiming unfair surprise must be duly diligent in attempting to avoid potential prejudice, we find no fault with plaintiff's counsel here. Cf. 6A Moore's Federal Practice § 59.08[2] at p. 59–111.

The prejudice that resulted at trial was precisely that which our procedural rules were designed to prevent. It was occasioned solely by the failure of defendants to properly disclose their theory of defense, and for this, they, not plaintiff, must bear the blame. Moreover, we are convinced that, regardless of any efforts at rebuttal, the surprise thrust upon the plaintiff at trial substantially impaired his right to a fair and orderly presentation of his case to the jury.

We hold, therefore, that the factual defense that there was no separation paper in the hold of defendant's ship should have been disclosed at the pretrial stage of this case and that the failure to do so "was contrary to the spirit of the . . . Rules of Civil Procedure that surprise should be eliminated as a trial tactic, and contrary as well to the purpose and spirit of pre-trial procedure as established and conducted in this court. The failure to disclose that this was to be an important defense on the facts prevented plaintiff from having a fair trial, in that plaintiff's counsel was deprived of the opportunity to meet this defense." *Burton v. Weyerhauser Timber Co.*, supra, 1 F.R.D. at 574.

We order a new trial reluctantly in this case, not because there is any doubt about our conclusion, but because it is necessary at all. The defendants here violated what must be seen as fundamental precepts of our pre-trial procedures in a manner that was inconsistent with the interests of justice. It is regretful that, by doing so, they demonstrated either an imprudent lack of preparation or a lack of fidelity to opposing counsel and to this Court, both of which, in terms of trial advocacy, are unacceptable attributes.