William **LARSEN**

v.

**INTERNATIONAL BUSINESS MACHINES CORP.**

**Civ. A. No. 78–260.**

United States District Court, E. D. Pennsylvania.

July 9, 1980.

On Motion For New Trial, Directed Verdict and Remittitur July 31, 1980.

---

Robert C. Daniels, Philadelphia, Pa., for plaintiff.

Howard M. Girsh, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

Before the Court for determination in this negligence action for personal injuries is plaintiff's motion for relief from judgment. Judgment was entered by the Court on February 21, 1980 following a jury verdict for the plaintiff in the amount of $300,-000.00. Plaintiff now seeks a modification of that judgment, allegedly pursuant to Rule 60 of the Federal Rules of Civil Procedure, to include damages for delay in the amount of $9,999.60 (10% per annum, not compounded) under Pennsylvania Rule of Civil Procedure No. 238, 42 Pa.C.S.A. (Supp. 1979–80).

Defendant denies that Pennsylvania law applies to this diversity action, maintaining that Virginia law governs. However, after careful consideration of the procedural aspects of plaintiff's motion, I have determined that Rule 60, Fed.R.Civ.P., as cited by plaintiff, is inoperative. Therefore, further discussion of the substantive conflicts of law issue, addressed by counsel in their supporting briefs and oral argument, is unnecessary. Instead, plaintiff's motion must be construed under Rule 59(e), Motion to Alter or Amend a Judgment, and as such, the motion has been untimely filed and therefore, shall be denied.

Plaintiff has requested this Court to grant additional relief pursuant to Fed.R. Civ.P. 60, by "modifying" the judgment. But, plaintiff has failed to show the specific subsection of the Rule [1], which he believes to be applicable to the present situation. It is well established that Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances. *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir. 1969). However, in the instant action, plaintiff has failed to bring to the Court's attention anything which could conceivably be construed as an "exceptional circumstance". Clearly, Rule 60 of the Federal Rules of Civil Procedure does not apply to the present situation.

Plaintiff's proper remedy was to move to alter or amend the February 21, 1980 judgment pursuant to Rule 59(e), Fed.R.Civ.P. That Rule provides:

(e) Motion to Alter or Amend Judgment. A Motion to Alter or Amend a judgment shall be served not later than 10 days after entry of the judgment.

In the present action, plaintiff did not file the instant motion until April 7, 1980, clearly 36 days after the 10 day filing period, as promulgated under Rule 59(e), had expired. Defendant may not avoid the time limitation imposed by Rule 59(e) by filing his

---

1. Rule 60(a) deals with clerical mistakes, and is therefore, not applicable to the present motion. Thus, presumably, plaintiff brings this motion pursuant to section (b) of Rule 60, which states:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discov-

ered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

motion pursuant to Rule 60(b). *United States v. Hall*, 463 F.Supp. 787, 791 (W.D. Mo.1978).

In *William Goldman Theatres, Inc. v. Loew's Inc.*, 83 F.Supp. 455 (E.D.Pa.1949), the court was requested to "reform" a final decree. In response to the plaintiff's motion, the court held that Rule 59(e) precluded the trial judge from entertaining the motion because it was made 55 days after the expiration of the 10 day filing period. *Id.* at 455. Therefore, in the present action, plaintiff may not avoid this procedural filing limitation merely by catagorizing its motion as one for "modification". The Court construes a request to "modify", for all intent and purposes, as being a request to "alter" or "amend" a final judgment pursuant to Rule 59(e).

Regardless of the terminology used, whether it be alter, amend, modify or reform, the moving party must comply with the 10 day procedural time limitation. Furthermore, as has been generally held, the Court is without power to extend the time in which a party may make a Rule 59(e) motion. *See generally*, 11 Wright & Miller, Federal Practice and Procedure: Civil § 2817, p. 109 (1973).

Therefore, plaintiff's motion for modification of the judgment entered on February 21, 1980 to include damages for delay is hereby DENIED.

## ON MOTION FOR NEW TRIAL, DIRECTED VERDICT AND REMITTITUR

This is an action for personal injuries arising from an accident on January 27, 1976 at an I.B.M. facility in Manassas, Virginia. Following a six day jury trial, the jury returned a verdict in favor of Plaintiff, William Larsen, and against Defendant,

I.B.M. Corporation, in the amount of Three Hundred Thousand Dollars ($300,000.00). Judgment was accordingly entered. It is that verdict and Judgment that Defendant I.B.M., now seeks to have set aside by its instant Motion for New Trial, Directed Verdict [1] and Remittitur.

Briefly stated, the facts which formed the basis for controversy between the parties are as follows: Plaintiff was employed as a truck driver for Eastern State Transportation Company. On January 27, 1976, Mr. Larsen, in compliance with a contractual agreement between his employer and Defendant I.B.M., delivered a shipment of liquid nitrogen to an I.B.M. facility located in Manassas, Virginia. Upon arriving at his destination, the tank farm area of the plant, Mr. Larsen, as part of the normal procedures, began attaching the pipes to the storage tanks' intake valves. In order to discharge his shipment of liquid nitrogen into the storage tanks, he had to proceed up a pathway onto a concrete pad area and manually open the valves. It was during this procedure, but before Mr. Larsen had reached the valve–release area, that he slipped and fell on a thin transparent coating of ice which covered the entire concrete pad. Vapors from the liquids already stored at the plant reacted with moisture from a misty rain and formed this thin layer of ice.

As a result of this accident, Plaintiff sustained numerous injuries, the most serious of which, effected his right leg and back. These injuries necessitated a long series of treatment and caused lengthy periods of disability. Plaintiff continued to experience pain and discomfort from his injuries up to the time of trial.

Defendant I.B.M. Corporation has advanced the following arguments [2] by way of

---

1. The Court will consider Defendant's request for a directed verdict as being in fact, a motion for judgment notwithstanding the verdict because of the rendering of a verdict by the trier of fact. Fed.R.Civ.P. 50(b).

2. There is one additional ground: "Other prejudicial and detrimental matters which the Notes of Testimony may reveal." Fed.R.Civ.P. 59(b)

sets forth a mandatory 10 day time limit for advancing grounds for a new trial. A party may not reserve the right to set forth additional grounds in support of its motion for a new trial until after the notes of testimony have been received. *Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.*, 427 F.2d 1273, 1275–76 (3d Cir. 1970); *McConney v. Great Atlantic & Pacific Tea Co.*, 455 F.Supp. 1143 (E.D.Pa.1978).

post trial motions, memorandum of law in support thereof and oral argument, for New Trial, Directed Verdict and Remittitur:

1. The verdict is contrary to law.

2. The evidence in this case, when considered in a light most favorable to Plaintiff, is insufficient to sustain the verdict of the jury because it failed to show any liability on the part of the Defendant.

3. The testimony of William S. Wood as an expert witness was improperly excluded by the Trial Judge.

4. The failure of the Court to rule on Defendant's motion for directed verdict under Rule 50(a) Fed.R.Civ.P. was prejudicial error.

5. The failure of the court to rule on Defendant's objection to a question addressed to Plaintiff's expert witness, Doctor Stein, resulted in prejudicial error.

6. The Court erred in denying Defendant's motion for a directed verdict because Plaintiff was guilty of contributory negligence as a matter of law.

7. The Court erred in permitting the admission of work–life tables to be admitted into evidence.

8. The Court erred in sustaining Plaintiff's objection to a question directed to Defendant's witness, Donald W. Wolf.

9. The jury verdict of $300,000.00 was excessive and shocks the conscience.

10. The Court erred in its charge to the jury following counsel's objections to certain portions of the charge.

## DISCUSSION

■ Motion for a new trial requires the exercise of discretion by the Court whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* § 59.08[5] at 59–160; *Morgan v.*

Accordingly, we will not discuss herein any grounds advanced by Plaintiff in his memorandum but not set forth in his motion. However,

*Bucks Assoc.*, 428 F.Supp. 546, 548, (E.D.Pa. 1977). The jury's verdict may be vitiated only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because it may have reached a different conclusion. *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976).

■ In summarizing the evidence and ruling on Defendant's motion, the Court shall view the evidence and the inferences therefrom in a light most favorable to the Plaintiff—the verdict winner. *Gebhardt v. Wilson Freight Forwarding Company*, 348 F.2d 129, 133 (3d Cir. 1965).

■ In determining the Defendant's motion for. a judgment notwithstanding the verdict, the Court is limited to the "question of law as to whether when all the evidence is considered, together with all reasonable inferences which may be drawn therefrom most favorably to the plaintiff, there is a *total failure* or lack of evidence to prove a necessary element of the plaintiff's case." *Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608, 613 (3d Cir. 1968), citing *Morris Brothers Lumber Co. v. Eakin*, 262 F.2d 259 (3d Cir. 1959).

After full consideration of counsels' briefs and the arguments advanced during oral argument of the instant motion, the Court has determined that the jury verdict should stand. Accordingly, Defendant's Motion for a New Trial, Directed Verdict and Remittitur is DENIED.

## EXCLUDED TESTIMONY OF WILLIAM S. WOOD

Defendant contends that the Court erred in not permitting William S. Wood to testify as an expert witness. Fed.R.Evid. 702, *Testimony By Experts*, provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness quali-

we have reviewed these claims and find that they too are without merit.

fied as an expert by knowledge, skill, experience, training , or education, may testify thereto in the form of an opinion or otherwise.

This rule is a codification of existing federal law and embodies two requirements for expert testimony. The first is that the testimony must assist the trier of fact to *understand* the evidence. The second is that the witness must be *qualified* as an expert. It is within the discretion of the Trial Court to determine whether each of these requirements have been met. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974): *see also, Salem v. United States Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). (trial judge's decision to admit or exclude may be overturned only on a showing that the ruling was clearly erroneous); *United States v. Trice*, 476 F.2d 89 (9th Cir.), *cert. denied*, 414 U.S. 843, 94 S.Ct. 103, 38 L.Ed.2d 81 (1973) (the trial judge decides the initial question of whether an expert may testify).

Prior to the testimony of William S. Wood, Plaintiff requested an offer of proof. Following a conference with the attorneys in Chambers, counsel for Defendant determined that Mr. Wood's testimony should be limited to "industry practice in the removal of ice and snow". (N.T. 60, Feb. 15, 1980). Plaintiff objected on the ground that Mr. Wood, a chemical engineer, was not qualified as a safety or safety design expert. Thereafter, the Court sustained Plaintiff's objection and refused to permit Mr. Wood to testify as to industry practice in the removal of ice and snow.

Defendant now claims that the exclusion was improper because Mr. Wood is a "safety expert" and because the name and address of the witness was furnished to opposing counsel in Defendant's pretrial memorandum.

Counsel for plaintiff pointed out at the time of trial, that Mr. Wood was not an expert on safety procedures at a plant facility such as the one at which Plaintiff was injured, but was instead, a chemical engineer. (N.T. 51, 61, Feb. 15, 1980). In addition, Mr. Wood's experience as to safety practices or procedures was, at best, extremely limited and did not in any way include first–hand knowledge or experience of the particular climatic or other conditions that were in existence at Defendant's plant facility in Virginia on the date of Plaintiff's accident and injuries. (N.T. 62, 64, Feb. 15, 1980). Particularly, Mr. Wood stated on the last paragraph of page one of his report, the only time in which he inspected the Manassas facility, that the sun was shining, the temperature was 85 degrees Fahrenheit, and the humidity was moderate. (N.T. 32, Feb. 19, 1980).

The Court also questioned the relevancy of any testimony which Defendant may have elicited from Mr. Wood, in that his testimony would have been totally unrelated to the climatic conditions and circumstances existing at the time and place of Plaintiff's slip and fall accident on January 27, 1976.

Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Court determined at trial, that any probative value of such testimony from Mr. Wood would have been substantially outweighed by the danger of confusing the issue and misleading the jury. Defendant catagorized Mr. Wood as a "safety expert" and sought to have him testify as to "industry standards". (N.T. 51, 52, Feb. 15, 1980). However, Mr. Wood is not a grounds expert and it is questionable whether he possesses any expertise in the area of snow removal or maintenance of the I.B.M. plant where Plaintiff sustained his injuries. In addition, it is possible that Mr. Wood would give testimony as to the conditions and practices at other plants which handle liquid nitrogen, thereby clouding the specific issue before the jury: whether I.B.M. Corporation was negligent in failing to provide Mr. Larsen with a safe place to work at their Virginia plant on January 27, 1976.

Furthermore, Defendant failed to assert as a defense the standard of appropriate industry practice in the removal, clearance and maintenance of icy pad conditions in the area of nitrogen tanks in his pretrial memorandum, during discovery, or even in his opening statement to the jury. (N.T. 38–41, Feb. 19, 1980; N.T. 12–14, Feb. 15, 1980). *See Taggart v. Vermont Transportation Company*, 32 F.R.D. 587 (E.D.Pa. 1963), *aff'd.*, 325 F.2d 1022 (3 Cir. 1964); *Pakech v. American Export–Isbrandtsen Lines, Inc.*, 69 F.R.D. 534 (E.D.Pa.1976). The Third Circuit announced in *Payne v. S. S. Nabob*, 302 F.2d 803 (3d Cir.), *cert. denied*, 371 U.S. 870, 83 S.Ct. 136, 9 L.Ed.2d 107 (1962):

> It has long been the law that *attorneys at the pretrial stage 'owe a duty to the court and opposing counsel to make a full and fair disclosure* of their views as to what the real issues at the trial will be.'
> . . . *It is through such disclosure at pretrial that trial prejudice can be avoided.* Id. at 807 (emphasis added).

*See also*, 3 *Moore's Federal Practice*, (2d Ed. 1948), § 16.11, p. 1120; *Hassan v. Stafford*, 472 F.2d 88, 95 (3d Cir. 1973); *Shuber v. S. S. Kresge Company*, 55 F.R.D. 52 (W.D.Pa. 1970); *aff'd.*, 458 F.2d 1058 (3d Cir. 1972); *Harvey v. Eimco Corporation*, 33 F.R.D. 360 (E.D.Pa.1963).

■ Therefore, under the above stated circumstances, it was proper for the Court to exclude Mr. Wood's testimony as an expert relating to industry practices.

### DEFENDANT'S 50(A) MOTION

Defendant next contends that the Trial Court failed to rule on Defendant's motion for a directed verdict, Fed.R.Civ.P. 50(a), which was made at the close of Plaintiff's case in chief, and that such an omission resulted in prejudicial error. Defendant directs the Court's attention to the following language in *Stevens v. G. L. Rugo & Sons, Inc.*, 115 F.Supp. 61 (D.Mass.1952) "After its power has been invoked the Trial Court not only can but must decide whether Plaintiff has made a prima facie case." *Id.* at 62.

In *Stevens*, the court reversed its ruling on Defendant's motion for directed verdict until after Defendant's case in chief. The court did not rule on the motion at that time, however, and the jury returned a verdict for the Plaintiff. The court then granted a judgment notwithstanding the verdict on the grounds that the jury's verdict was against the weight of the evidence. I find the situation in *Stevens* to be materially different from the case presently before this Court.

In *Stevens*, the court did not believe that Plaintiff had met his burden, yet required Defendant to proceed with his evidence on the theory that it would be "better to let the jury hear all the evidence and return a verdict, so that, if an appellate court should thereafter conclude that Defendant had not been entitled to a directed verdict, and Plaintiff was entitled to go to the jury, then the parties and the court could avoid the expense of a second trial". *Id.* at 61.

However, in the present case, the Court does not contest the verdict reached by the jury and it is therefore, difficult to see how Defendant has been prejudiced. Defendant was given a full and fair opportunity at trial to present his case and any failure on the part of the Court to make a dispositive ruling on Defendant's motion for a directed verdict was not prejudicial error.

In any event, Defendant now has the opportunity with the instant motion, pursuant to Fed.R.Civ.P. 50(b), to convince the Court that there was insufficient evidence to create an issue for the jury.

Fed.R.Civ.P. 50(b) states in pertinent part:

> Whenever a motion for a directed verdict made at the close of all the evidence is deemed or *for any reason is not granted*, the court is deemed to have submitted the action to the jury subject to a later determination of the legal question raised by the motion. (emphasis added).

It should have been clear to defense counsel, by implication at the very least, that the motion was denied when the case was submitted to the jury. It was obvious, at

least to the Court and counsel for Plaintiff, that Defendant's Rule 50(a) motion was being denied.

Suffice it to say, that Defendant never pressed the motion, or called to the Court's attention the fact that it had not "clearly ruled" upon the motion by the time the case was submitted to the jury. Defendant cannot stand idly by and "passively" allow a potential trial error to occur. *See Jenkins v. General Motors Corporation*, 446 F.2d 377 (5th Cir. 1971); *Schramm v. Oakes* , 352 F.2d 143, 148 (10th Cir. 1965); *Occidental Petroleum Company v. Walker*, 289 F.2d 1, 6 (10th Cir. 1961).

■ As was stated in *Faudree v. Iron City Sand & Gravel Company*, 201 F.Supp. 447 (W.D.Pa.1962):

> Though a trial judge is an administrator primarily charged with just conduct of the trial, he may not ordinarily be put in error merely because an aberration from trial rules has occurred. It is the duty of counsel, by objection, to call such threatened or actual departure to the judge's attention and invoked his corrective action and, if overruled, to make it appear that prejudice has resulted. *Id.* at 450.

Thus, I have determined that no error was made which would require the upsetting of the jury's verdict.

### RULING ON OBJECTION TO EXPERT TESTIMONY

It is submitted by Defendant in support of his present motion that the Court made a prejudicial error by failing to rule on Defendant's objection to a question asked of Doctor Stein. The specific question that was asked during the videotaped testimony of Raymond O. Stein concerned the issue of Plaintiff's disability:

Q. Did that trouble or whatever it was ever cause him any disability, according to what he told you?

A. I would presume not as far as from what he said, because I would presume his statement when I asked him if he had trouble with his back, he said "No", would indicate that he

may have had an occasional achiness, change of weather or maybe some stiffness in his back, something of that sort. That almost certainly would have indicated he had not had really serious major problems with it before. (N.T. 23, Feb. 13, 1980).

At that point, counsel for Defendant objected to the question and answer.

The Court's tacit response to Defendant's objection should have placed the Defendant on notice that the ruling had been decided against him. Fed.R.Evid. 401, 402, permit testimony to be received into evidence if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The question of Plaintiff's disability certainly was in issue and Doctor Stein's response did tend to make the existence of Plaintiff's disability more probable.

Furthermore, in the morass of medical testimony that was presented from no less than three Board certified Orthopedic specialists (Doctor Raymond O. Stein, Doctor Jacob Krause and Doctor William H. Simon), Defendant points to one single question, as the ground for a new trial. The question related to the issue of Plaintiff's disability. Each doctor who testified, clearly indicated that it was their separate and respective conclusion and opinion that Plaintiff was disabled from performing his former occupation as an over–the–road truck driver following his injuries of January 27, 1976. (N.T. 23, 90–94, 98–99, Feb. 13, 1980; N.T. 25, Feb. 19, 1980).

■ Therefore, Defendant cannot now claim that the Court's tacit response to Defendant's objection resulted in judicial error. It was clear that the Court was allowing Doctor Stein's testimony to be admitted into evidence and if Defendant sought a verbal ruling from the Court to that effect, the burden fell upon Defendant to call to the Court's attention the fact that one had not been given.

## CONTRIBUTORY NEGLIGENCE CLAIM

It is submitted by the Defendant that the Court should have granted Defendant's motion for directed verdict based upon the premise that Plaintiff was guilty of contributory negligence as a matter of law. In support, Defendant asserts that during Plaintiff's cross–examination, he testified that after he fell, he could see the ice, (N.T. 70, Feb. 12, 1980), and that it was twelve to fifteen feet long and five or six feet wide. (N.T. 71, Feb. 12, 1980). Plaintiff also testified that he was not looking for any ice, and that is why he did not see it before he fell. (N.T. 71, Feb. 12, 1980).

Defendant maintains that Plaintiff's own testimony proved that he was contributorily negligent and therefore, the ultimate question should never have gone to the jury but instead, should have been decided by the Court.

Such testimony is taken entirely out of context. The Plaintiff testified that prior to his fall he did not observe the presence of ice, but only a wet surface on the cement pad. (N.T. 21–27, Feb. 12, 1980).

Plaintiff specifically testified on redirect examination that he "wasn't looking for ice" because "it was forty–eight degrees outside" and he "didn't expect to see any ice". (N.T. 110–112, Feb. 12, 1980).

In *Brady v. Southern Railroad*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943), the Supreme Court handed down the basic rule concerning the granting of a directed verdict:

> When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non–suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial, the result is saved from the mischance of speculation over legally unfounded claims. *Id.* at 479–80, 64 S.Ct. at 234.

In the instant case, more than one "reasonable conclusion" could have been reached. Plaintiff testified that he did not see any ice prior to the time of his fall. (N.T. 25, Feb. 12, 1980). Therefore, Plaintiff's alleged contributory negligence was properly submitted as a question of fact, to be determined by the jury after weighing the credibility of the witnesses' testimony and all the evidence adduced at trial.

In addition, the Court's charge to the jury on the issue of contributory negligence was made under Virginia law. (N.T. 67–69, Feb. 20, 1980). In that connection, Virginia law provides that the contributory negligence of an injured Plaintiff does not bar his recovery if it was only a slight or trivial contributing factor to his accident and injuries. In such event, a verdict in favor of an injured Plaintiff and against Defendant is still proper. *See Simpson v. Lambert Brothers Div.–Vulcan Materials Company*, 362 F.2d 731, 734 (4th Cir. 1966); *Cooke v. Griggs*, 183 Va. 851, 856–857, 33 S.E.2d 764, 766 (1945); *Yeary v. Holbrook*, 171 Va. 266, 198 S.E. 441 (1938). Accordingly, the issue of contributory negligence was clearly a jury question in the present action and it would have been improper for the Court to decide the issue as a matter of law.

## WORK–LIFE TABLES

It is submitted by Defendant that the submission of the work–life expectancy tables to the jury injected an issue of speculation that warrants a new trial.

The work–life tables, as offered into evidence by Plaintiff, were properly received by the Trial Court. Defendant did not and does not question the authenticity of such tables, but only their relevancy. The admission of relevant testimony is governed by Fed.R.Evid. 401 and 402, and the Court's determination as to what evidence is to be received is determinative and conclusive in the absence of abuse of discretion. *See generally, Control Data Corp. v. I. B. M.*, 421 F.2d 323 (8th Cir. 1970); *Beaty Shopping Center Inc. v. Monarch Insurance Co.*, 315 F.2d 467 (4th Cir. 1963).

Surely, the admission of work–life tables in the instant action was proper, particularly in light of the testimony of all three medical expert Orthopedic surgeons who unanimously agreed that Plaintiff was disabled from performing and should not be permitted to continue his former occupation as an over–the–road truck driver. Two of those experts, Doctors Stein and Krause, directly attributed such disability to Plaintiff's accident and injuries of January 27, 1976. Accordingly, the work–life tables, which were central to the issue of Plaintiff's disability, were properly received into evidence.

## EVIDENTIARY RULING

Defendant asserts that the Trial Court improperly sustained Plaintiff's objection to the following question directed to Donald W. Wolfe:

Q. Mr. Wolfe, when you went to the pad at about 7:15 A.M., and you said the temperature was in the mid–forties at that time, and that it was drizzling and you said you did not see any ice in the area where Mr. Larsen fell. Did you expect ice to form there? (N.T. 26, Feb. 15, 1980).

Fed.R.Evid. 103 applies to court rulings on the admission or exclusion of evidence. Under this evidentiary provision, a court's ruling cannot be assigned as error unless (1) a substantial right is affected, and (2) the nature of the error was called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take proper corrective measures. Fed.R.Evid. 103 (Advisory Comm. Notes).

Substantial right is a term of art, which is applied on a case–by–case basis. Mechanical and technical rules must be rejected in the finding of a violation of a substantial right. J. Cotchett and A. Elkind, *Federal Courtroom Evidence*, at 11–12 (1976 and Supp. 1980).

Defendant cannot seriously suggest that such a substantial right was affected by the Trial Court's sustaining Plaintiff's counsel's objection to the indicated question, which, I point out, called for a purely speculative answer. Moreover, Mr. Wolfe testified at great length, both in his pretrial deposition that was presented in Plaintiff's case in chief (N.T. 25–64, Feb. 11, 1980), and again in Defendant's case in chief. (N.T. 15–51, Feb. 15, 1980). He testified at great length concerning the facts and circumstances existing on the morning of Plaintiff's fall both prior and subsequent thereto.

However, even assuming *arguendo* that I.B.M.'s substantive rights were effected, and I do not believe this to be the case, the Defendant did not advise the Court as to the nature of the Court's potential error and has therefore, failed to satisfy the second requirement of Fed.R.Evid. 103. Accordingly, Defendant's present motion cannot be granted upon this ground.

## REMITTITUR

Defendant finally asserts that the jury verdict of Three Hundred Thousand Dollars ($300,000.00) was excessive and shocks the conscience of the Court. I disagree. When measured against the special damages in the case, the jury verdict was certainly not excessive or shocking. Plaintiff's medical bills were in the amount of $2,205.00. (*See* Plaintiff's Exhibit No. 6). His lost earnings in the past, covering the periods of his disability in 1976, 1977 and 1978, were in excess of Thirty Thousand Dollars ($30,000.00). In 1979, his last full work year before the trial of this matter, Plaintiff earned almost Thirty Thousand Dollars ($30,000.00). Testimony was elicited from Doctor Jacob Krause, a Board certified Orthopedic surgeon, that Mr. Larsen's work–life expectancy as a truck driver would continue for another six or seven years at the most. (N.T. 101–102, Feb. 13, 1980). Thus, a 53 year old man, (N.T. 3, Feb. 12, 1980), would have a work–life expectancy of an additional six years beyond the period that Mr. Larson would be able to work as a truck driver. In addition, the Plaintiff had a life expectancy of 21.2 years from the present time, during which he, but for the injuries suffered as a result of this

**612**

accident, would have had the capability of performing some kind of work. Accordingly, the records support a finding that Plaintiff would suffer earning capacity impairment in the future of an amount anywhere between $180,000.00 on the low side (6 yrs. × $30,000.00 per year) to an amount of $420,000.00, if he had continued to work as a truck driver for the remainder of his life expectancy (21 − 7 = 14 × $30,000.00 per year). (*See* Plaintiff's Exhibit # 9, # 10 and # 11).

In addition to those special damages which the jury was entitled to find that Plaintiff had suffered as a consequence of the accident on January 27, 1976, the jury was also charged as to the damage element of pain and suffering, past, present and future. The jury could easily have determined from the evidence presented in this matter, that an award for pain and suffering was totally justifiable. There is no fixed rule or exact standard by which damages can be measured in personal injury cases. The law does not assume that a particular injury calls for a definite amount of compensation, for just compensation may vary widely in different cases, even where the physical injury is the same, especially where the injury is permanent, or where pain and suffering are involved. 22 Am. Jur.2d, Damages § 86.

■ The amount to be awarded is therefore, largely a question for the jury, to be determined by it in view of the facts and circumstances of the particular case. Wide discretion is given to the jury in its determination of an award of damages.

Considering all of the above, the monetary award of the jury verdict was fully and totally justified and supported by the trial record in this case.

CONCLUSION

For all of the foregoing reasons, the Motion of Defendant, I.B.M. Corporation, for a New Trial, Directed Verdict and Remittitur is DENIED.